IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **NATIONWIDE AFFINITY INSURANCE COMPANY OF AMERICA,**<br><br>**Plaintiff,**<br><br>v.<br><br>**SHANNON L. KALB AND SOPHIA C. SAWYER,**<br><br>**Defendants.** | Case No. 22-1103-DDC-KGG |

## MEMORANDUM AND ORDER

Plaintiff Nationwide Affinity Insurance Company filed this declaratory judgment action under 28 U.S.C. § 2201. It seeks a declaratory judgment against defendants Shannon L. Kalb and Sophia C. Sawyer. Specifically, the requested judgment would declare that plaintiff has no duty to defend or indemnify defendant Shannon L. Kalb against the claims and damages alleged by defendant Sophia C. Sawyer in an underlying lawsuit pending in the District Court of Sedgwick County, Kansas.

Defendant Sophia C. Sawyer has filed a Motion to Dismiss or, in the alternative, to Stay Plaintiff's Complaint for Declaratory Relief. Doc. 8. Also, defendant Shannon L. Kalb has filed a Motion to Dismiss. Doc. 20. Both motions ask the court to decline to exercise jurisdiction over this declaratory judgment action because, they contend, it's premature to decide whether to grant a declaratory judgment while the underlying state court lawsuit still is pending. For reasons explained below, the court denies both defendants' Motions to Dismiss. But the court grants defendant Sophia C. Sawyer's request that the court stay the lawsuit until the underlying state court action is resolved. It explains why, below.

I.      **Factual Background**

Plaintiff's Complaint alleges the following facts (Doc. 1).

*The Underlying Civil Lawsuit*

Defendant Sophia C. Sawyer has filed a civil lawsuit against defendant Shannon L. Kalb in the District Court of Sedgwick County, Kansas, Case No. 2022-CV-000048-OT (the "Underlying Action"). Doc. 1 at 2 (Compl. ¶ 7). Ms. Sawyer's lawsuit asserts personal injury claims and seeks damages against Ms. Kalb. *Id.* Plaintiff Nationwide Affinity Insurance Company of America has attached to its Complaint a copy of the Petition in the Underlying Action. Doc. 1-1. And plaintiff incorporates that Petition into its Complaint by reference. Doc. 1 at 2 (Compl. ¶ 7).

In the Underlying Action, Ms. Sawyer alleges that on January 4, 2021, she was present in Ms. Kalb's home. Doc. 1 at 2 (Compl. ¶ 8). She asserts that Ms. Kalb suddenly became angry and, without warning, began to attack her. *Id.* Ms. Sawyer alleges that Ms. Kalb slammed her face into a brick wall, pulled out her hair, and struck or slammed her body repeatedly. *Id.* The Underlying Action's Petition asserts two Kansas tort claims against Ms. Kalb: (1) Count I alleges a negligence claim, and (2) Count II alleges a battery claim. *Id.* (Compl. ¶ 9). Ms. Sawyer alleges that she sustained injuries and damages from Ms. Kalb's actions, "including, but not limited to, pain and suffering, non-economic damages, including medical expenses, loss of income, and damage to personal effects." *Id.* at 3 (Compl. ¶ 10). And the Petition includes a prayer for relief that requests damages exceeding $75,000. *Id.*; *see also* Doc. 1-1 at 4. Plaintiff currently is defending Ms. Kalb in the Underlying Action subject to a reservation of rights. Doc. 1 at 3 (Compl. ¶ 11).

*Criminal Charges Filed Against Ms. Kalb*

On April 30, 2021, the State of Kansas filed criminal charges against Ms. Kalb based on the January 4, 2021 incident and related matters. Doc. 1 at 3 (Compl. ¶ 12). On November 10, 2021, Ms. Kalb pleaded guilty to: (1) three charges of battery as a Class B misdemeanor for either knowingly or recklessly causing bodily harm to another person (Sophia Sawyer); (2) one charge of battery against a police officer as a Class A misdemeanor; and (3) two charges for violating a protective order, a Class A misdemeanor. *Id.* (Compl. ¶ 13). On February 10, 2022, the District Court of Sedgwick County sentenced Ms. Kalb to three to six months in jail for the first three counts of battery against Ms. Sawyer. *Id.* at 3–4 (Compl. ¶ 14). The District Court also sentenced Ms. Kalb to jail time for the other charges. *Id.* But later, Ms. Kalb's sentence was suspended, and she was placed on probation. *Id.*

*The Insurance Policy*

Plaintiff issued Policy No. 7215HR008590 to Kenneth Kalb and Shannon Kalb, effective July 3, 2020 to July 3, 2021. Doc. 1 at 4 (Compl. ¶ 15). Plaintiff has attached a copy of the Insurance Policy to its Complaint. *Id.*; *see also* Doc. 1-2. And the Complaint incorporates the Insurance Policy by reference. Doc. 1 at 4 (Compl. ¶ 15).

The Insurance Policy provided liability coverage with a limit of $1,000,000 per "occurrence" for Coverage-E-Personal Liability for property damage and bodily injury, and a limit of $5,000 for each person for Coverage-F-Medical Payments to Others. Doc. 1 at 4 (Compl. ¶ 16); *see also* Doc. 1-2 at 5. The insurance policy includes definitions for the following pertinent terms:

> **DEFINITIONS**
>
> **A.** "We", "us" and "our" refer to the company providing this insurance.

**B.** Throughout this policy, "you" and "your" refer to:

**1.** The "named insured" shown in the Declarations;

**2.** The spouse if a resident of the same household;

**3.** The civil partner of the named insured by Civil Union or Registered Domestic Partnership filed and recognized by the state if a resident of the same household; or

**4.** A "Domestic partner".
If the spouse or civil partner who has entered in a Civil Union or Registered Domestic Partnership with the named insured ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse or civil partner will be considered "you" and "your" under this policy but only until the earlier of:
**1.** The end of 90 days following the spouse's or civil partner's change of residency;
**2.** The effective date of another policy listing the spouse or civil partner as a named insured; or
**3.** The end of the policy period.

**C.** In addition, certain words and phrases are defined as follows:

. . .

**4.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results. "Bodily injury" does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

. . .

**8.** "Insured" means:
  **a.** You and residents of your household who are:
    **(1)** Your relatives; or
    **(2)** Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative.

. . .

4

> **11.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
> **a.** "Bodily injury"; or
> **b.** "Property damage"
>
> . . .
>
> **13.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

Doc. 1 at 4–5 (Compl. ¶ 17); *see also* Doc. 1-2 at 14–18.

The Insurance Policy's "Section II – Liability Coverages" includes terms and conditions for liability coverage. Doc. 1 at 5–6 (Compl. ¶ 18); *see also* Doc. 1-2 at 39. It includes the following provisions:

> **SECTION II – LIABILITY COVERAGES**
>
> **A. Coverage E – Personal Liability**
>
> If a claim is made or a suit is brought against an "insured" for damages due to an "occurrence" resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property, we will:
> **1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and
> **2.** Provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.
>
> **B. Coverage F – Medical Payments to Others**
>
> We will pay the reasonable and necessary medical and funeral expenses that are "incurred" within three years from the date of an accident causing "bodily injury". This coverage does not apply to you or regular residents of your household except "residence employees".
>
> As to others, this coverage applies only:
> **1.** To a person on the "insured location" with the permission of an "insured"; or
> **2.** To a person off the "insured location", if the "bodily injury":
>
> . . .

>> **b.** is caused by the activities of an "insured"[.]

*Id.*

Also, the Insurance Policy includes the following pertinent exclusions for the liability coverage:

> **SECTION II – EXCLUSIONS**
>
> . . .
>
> **E. Coverage E – Personal Liability and Coverage F – Medical Payments to Others**
>
> Coverages E and F do not apply to the following:
>
> **1. Expected or Intended Injury**
>
>> "Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":
>> **a.** Is of a different kind, quality or degree than initially expected or intended; or
>> **b.** Is sustained by a different person, entity or property than initially expected or intended.
>> However, this Exclusion **E.1** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;
>
> **2. Criminal Acts**
>
>> "Bodily injury" or "property damage" caused by or resulting from an act or omission that is criminal in nature and committed by a "insured". This exclusion applies regardless of whether the "insured" is actually charged with or convicted of a crime[.]

Doc. 1 at 6 (Compl. ¶ 19); *see also* Doc. 1-2 at 39–41.

### *Plaintiff's Request for Declaratory Judgment*

Plaintiff asserts that the Insurance Policy doesn't provide coverage for the injuries that Ms. Sawyer alleges Ms. Kalb imposed on her in the Underlying Action. Doc. 1 at 6–7 (Compl. ¶¶ 20–24). Plaintiff contends that the Insurance Policy covers bodily injury or property damage

6

only when the injury or damage is caused by an "occurrence," as the Policy defines that term. *Id.* at 6 (Compl. ¶ 20). And, plaintiff alleges, the injuries that Ms. Sawyer asserts against Ms. Kalb in the Underlying Action don't involve an "occurrence" that is covered under the Policy. *Id.* (Compl. ¶ 21). Also, plaintiff alleges that the exclusion for "expected or intended injury" applies to preclude coverage for Ms. Sawyer's alleged injuries and damages against Ms. Kalb in the Underlying Action. *Id.* (Compl. ¶ 22). And plaintiff asserts that the Insurance Policy's "criminal acts" exclusion also applies to preclude coverage for Ms. Sawyer's injuries and damages alleged against Ms. Kalb in the Underlying Action. *Id.* at 7 (Compl. ¶ 23). As a consequence, plaintiff asserts that it has no duty to defend or indemnify Ms. Kalb against the claims and damages alleged by Ms. Sawyer in the Underlying Action. *Id.* (Compl. ¶ 24). It thus seeks a declaratory judgment from this court declaring that it has no duty to defend or indemnify Ms. Kalb against Ms. Sawyer's alleged the claims and damages in the Underlying Action. *Id.* (Compl. ¶ 27).

## II.     Legal Standard

The Declaratory Judgment Act "authorizes federal courts to declare the legal rights and obligations of adversaries, but does not impose a duty to do so." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Midland Bancor, Inc.*, 854 F. Supp. 782, 788 (D. Kan. 1994) (citing *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989)). "Declaratory judgment actions are particularly appropriate for situations in which insurance companies seek a declaration of their liability." *Id.* at 789.

But a federal court "'should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding.'" *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995)

(quoting *Kunkel*, 866 F.2d at 1276).  The decision whether "'to entertain a justiciable declaratory judgment action is a matter committed to the sound discretion of the trial court.'"  *Nat'l Union Fire Ins. Co.*, 854 F. Supp. at 788–89 (quoting *Kunkel*, 866 F.2d at 1273).

When determining whether to exercise this discretion, the Tenth Circuit has directed district courts to consider the following factors:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (citation and internal quotation marks omitted).

The next section of this Order applies these five *Mhoon* factors to decide whether the court should exercise or decline to exercise jurisdiction over this declaratory judgment action.

### III.     Analysis

Defendants Kalb and Sawyer both ask the court to dismiss this action because, they argue, it involves factual issues that are "central" to the Underlying Action.  Doc. 9 at 7; Doc. 20 at 7.  Specifically, they argue that the Underlying Action will decide the issue of Ms. Kalb's intent on January 4, 2021, when the incident occurred.  And, they argue, the intent issue also is relevant to the disputes in this declaratory judgment action whether the Insurance Policy provides coverage for Ms. Kalb against Ms. Sawyer's claims and damages in the Underlying Action.  As a consequence, they assert that the court should decline to exercise jurisdiction over this action.  Alternatively, Ms. Sawyer asks the court to stay the action pending the Underlying Action's resolution.

Plaintiff opposes both defendants' motions. Plaintiff asserts that the five *Mhoon* factors favor the court exercising jurisdiction over this action. The court addresses those five *Mhoon* factors in the paragraphs that follow.

*First*, the court evaluates "whether a declaratory action would settle the controversy[.]" *Mhoon*, 31 F.3d at 983. This first *Mhoon* factor weighs slightly in favor of exercising jurisdiction over the action. This declaratory judgment action would settle the controversy whether plaintiff has a duty to defend Ms. Kalb in the Underlying Action. Also, this lawsuit can decide whether plaintiff is required to pay any judgment in the underlying lawsuit.

But this lawsuit won't decide the underlying liability issues—*i.e.*, whether Ms. Kalb acted intentionally, recklessly, or negligently when she injured Ms. Sawyer on January 4, 2021. Plaintiff says that this decision won't matter now that Ms. Kalb has pleaded guilty to three charges of battery "for either knowingly or recklessly causing bodily harm to another person (Sophia Sawyer)[.]" Doc. 1 at 3 (Compl. ¶ 13). And, plaintiff contends, the Insurance Policy doesn't provide coverage here because the "occurrence" at issue involved knowing or reckless conduct. *See Thomas v. Benchmark Ins. Co.*, 179 P.3d 421, 432 (Kan. 2008) (holding that insurance policy's "intentional act exclusion" barred coverage for accident caused by insured's "reckless" driving because "injury was substantially certain to result under [the] circumstances: driving the wrong way against traffic, failing to stop at a stop sign, and driving at 100 m.p.h. through neighborhoods"). Also, plaintiff asserts, the "occurrence" involved "criminal acts" that the Insurance Policy doesn't cover.

Defendants disagree. They assert that discovery in the underlying lawsuit is necessary to determine Ms. Kalb's intent—*i.e.*, whether she acted (1) intentionally, or (2) "recklessly" because "injury was substantially certain to result under [the] circumstances[,]" *Thomas*, 179

9

P.3d at 432, or (3) negligently when she injured Ms. Sawyer on January 4, 2021.  Also, defendants argue, the "criminal acts" exclusion is vague and overbroad, and thus, it doesn't preclude coverage.

Notwithstanding the parties' arguments whether coverage exists under the current facts, it's undisputed that the Underlying Action won't decide the coverage issues.  Thus, the first *Mhoon* factor slightly favors exercising jurisdiction because this declaratory judgment action will settle the controversy whether plaintiff's Insurance Policy obligates plaintiff to defend and indemnify Ms. Kalb in the Underlying Action.

*Second*, the court considers whether this declaratory judgment action "would serve a useful purpose in clarifying the legal relations at issue[.]"  *Mhoon*, 31 F.3d at 983.  The court finds that this second factor favors exercising jurisdiction.  The Declaratory Judgment Act "enables parties uncertain of their legal rights to seek a declaration of rights prior to injury." *Kunkel*, 866 F.2d at 1274 (citations omitted).  A declaratory judgment in this action would clarify the parties' legal relationships and resolve the uncertainty about plaintiff's obligations under its Insurance Policy.  Thus, this second *Mhoon* factor also favors exercising jurisdiction over this declaratory judgment action.

*Third*, the court evaluates "whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*[.]"  *Mhoon*, 31 F.3d at 983 (citation and internal quotation marks omitted).  The parties agree.  This declaratory judgment action doesn't involve any procedural fencing or racing to secure *res judicata*.  Thus, the third *Mhoon* factor is a neutral one.  *See Cont'l Cas. Co. v. Complete Constr. LLC*, No. 20-2492-JWB, 2021 WL 274516, at *5 (D. Kan. Jan. 27, 2021) (concluding the third *Mhoon* factor was neutral when there was no basis to find that either party was forum shopping); *see also*

10

*Allstate Prop. & Cas. Ins. Co. v. Salazar-Castro*, No. 08-2110-CM, 2009 WL 997157, at *2 (D. Kan. Apr. 14, 2009) (concluding the third *Mhoon* factor was "neutral" when "[n]othing in the record suggests procedural fencing or a race to res judicata on plaintiff's part").

*Fourth*, the court evaluates "whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction[.]" *Mhoon*, 31 F.3d at 983. Our Circuit has instructed that a "federal court generally should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." *Kunkel*, 866 F.2d at 1276 (citations omitted). Here, the Underlying Action won't decide whether the Insurance Policy obligates plaintiff to defend and indemnify Ms. Kalb. But the Underlying Action likely will resolve the issue of Ms. Kalb's intent when she injured Ms. Sawyer on January 4, 2021. Was Ms. Kalb's conduct intentional? Does it qualify as "reckless" because "injury was substantially certain to result under" the circumstances? *Thomas*, 179 P.3d at 432. Or was her conduct merely negligent?

This fact issue over Ms. Kalb's intent overlaps with some of the questions in this lawsuit—*i.e.*, whether the incident on January 4, 2021 qualifies as an "occurrence" under the Insurance Policy or whether it is excluded by the "expected or intended injury" exclusion. Given these facts, the court finds that deciding this declaratory judgment action "would cause friction between state and federal courts." *Allstate Prop.*, 2009 WL 997157, at *2 (holding that the fourth *Mhoon* factor was "the one most significant to the court" because both cases "require[d] a determination of the same key factual issues"); *see also Nat'l Cas. Co. v. Thomas & Sons Trucking, L.L.C.*, No. 14-4023-CM, 2015 WL 265519, at *2 (D. Kan. Jan. 21, 2015) (explaining that the "fourth [Mhoon] factor [was] particularly significant" and favored declining to exercise

11

jurisdiction because declaratory judgment action involved "key factual issues that [were] also before the state court"); *Cont'l W. Ins. Co. v. Robertson Tank Serv., Inc.*, No. 12-1087-KHV, 2013 WL 1447067, at *4 (D. Kan. Apr. 9, 2013) (holding that "a decision whether [insurer] is obligated to defend and indemnify [defendants in underlying lawsuit] would result in friction between state and federal courts" because "fact issues in the state court tort action overlap[ped] with issues in the federal complaint for declaratory judgment"). Thus, the court finds that this fourth *Mhoon* factor strongly favors declining to exercise jurisdiction.

*Fifth*, the court evaluates "whether there is an alternative remedy which is better or more effective." *Mhoon*, 31 F.3d at 983. As already discussed, "[d]eclaratory judgment actions are particularly appropriate for situations in which insurance companies seek a declaration of their liability." *Nat'l Union Fire Ins. Co.*, 854 F. Supp. at 789. And here, there is no alternative remedy for deciding the insurance coverage issues. The Underlying Action only will resolve the liability and damages issues between Ms. Kalb and Ms. Sawyer. But also, the Underlying Action may "resolve some of the critical fact issues in this" declaratory judgment action. *Cont'l W. Ins. Co.*, 2013 WL 1447067, at *4. In such circumstances, our court has found this fifth *Mhoon* factor a neutral one. *See Allstate Prop.*, 2009 WL 997157, at *2; *see also Nat'l Cas. Co.*, 2015 WL 265519, at *3.

Also, these same cases have recognized that the declaratory judgment action only is required "to determine insurance coverage issues" if "[a]t some point," the insured "is found to be at fault in the state tort action[.]" *Allstate Prop.*, 2009 WL 997157, at *2. Otherwise, the declaratory judgment action "may eventually be moot if [the insured] is found not at fault in the state tort action." *Id.*; *see also Nat'l Cas. Co.*, 2015 WL 265519, at *3 (recognizing that not all of the fact issues in the underlying state court action "will be relevant to determin[ing]" whether

the incident "constitute[d] a covered loss," but "some facts may be" and also, "the outcome of the state court action could ultimately moot this case"). In these cases, our court has concluded that a stay is an appropriate alternative remedy. *See Allstate Prop.*, 2009 WL 997157, at *2–3 ("On the other hand, a stay of this case until the state tort action is resolved would present a more logical, efficient treatment of the case."); *see also Nat'l Cas. Co.*, 2015 WL 265519, at *3 ("[S]taying this case until the state tort action is resolved is a more efficient treatment of the case."); *Cont'l W. Ins. Co.*, 2013 WL 1447067, at *4 (holding that a stay of the action until the underlying state court lawsuit was resolved was an "appropriate alternative remedy).

To recap the court's analysis of the five *Mhoon* factors: the first factor favors exercising jurisdiction but just slightly; the second factor favors exercising jurisdiction; the third and fifth factors are neutral; and the fourth factor strongly favors declining to exercise jurisdiction. On balance, the *Mhoon* factors favor declining to exercise jurisdiction. The court reaches this conclusion because the fourth factor—which our court has found "the one most significant" in cases involving "a determination of the same key factual issues"—strongly favors declining jurisdiction until the fact-dependent issues of intent are decided in the Underlying Action. *Allstate Prop.*, 2009 WL 997157, at *2; *see also Nat'l Cas. Co.*, 2015 WL 265519, at *2.

But exercising its discretion, the court declines to dismiss the case altogether. As *Mhoon* suggests, when a factual dispute exists in the declaratory judgment while there are "ongoing state proceedings on the same subject[,]" a stay of the declaratory judgment action "might be proper in such [a] case[.]" *Mhoon*, 31 F.3d at 984. And a court need not dismiss the declaratory judgment action if "the duty to defend and coverage issues would remain to be decided in light of the outcome of the state case." *Id.* Thus, after weighing all the *Mhoon* factors and considering the Tenth Circuit's guidance, the court concludes that a stay is the appropriate alternative action to

13

proceeding with the declaratory judgment under the current posture. Thus, the court stays this action pending the resolution of the Underlying Action.

## IV.     Conclusion

For reasons explained, the court denies defendants' Motions to Dismiss. And the court grants Ms. Sawyer's request to stay the lawsuit. The court stays this declaratory judgment action pending the District Court of Sedgwick County, Kansas's resolution of the underlying civil lawsuit filed by Ms. Sawyer against Ms. Kalb.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Sophia C. Sawyer's Motion to Dismiss or, in the alternative, to Stay Plaintiff's Complaint for Declaratory Relief (Doc. 8) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** defendant Shannon L. Kalb's Motion to Dismiss (Doc. 20) is denied.

**IT IS FURTHER ORDERED THAT** this action is stayed pending the District Court of Sedgwick County, Kansas's resolution of the civil lawsuit No. 2022-CV-000048-OT, filed by Sophia C. Sawyer against Shannon L. Kalb.

**IT IS FURTHER ORDERED THAT** the parties must submit a joint status report to the court informing the court when the underlying state civil lawsuit is resolved. The parties must submit such a status report within 30 days of a judgment's entry in the Underlying Action or by July 31, 2023, whichever is earlier.

**IT IS SO ORDERED.**

**Dated this 16th day of December, 2022, at Kansas City, Kansas.**

                                              s/ Daniel D. Crabtree
                                              Daniel D. Crabtree
                                              United States District Judge